# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

NUAMAN ABDULLA AHMED AL )
NOAIMI and DR. NADER MOHAMMAD )
ABDALLA OBEID, )
                                                          )
                Plaintiffs, )
                                                           )
v. )    Case No. 11-1156-EFM
                                                           )
NAJIB HASSAM AHMAD )
ZAID, a/k/a Gene H. Zaid, )
JACAM MANUFACTURING LLC, )
JACAM CHEMICAL COMPANY INC., )
JACAM MANUFACTURING CHEMICALS )
COMPLEX, )
JACAM CHEMICALS LLC, )
JACAM SPECIALTYCHEMICALS LLC, )
and JACAM CHEMICAL PARTNERS Ltd. )
                                                          )
              Defendants. )
                                                          )

## **MEMORANDUM AND ORDER**

This matter is before the court on the parties' respective motions to compel discovery (Doc. 36 & 38). The rulings are set forth below.

**Background**[1]

This case springs from complex business relationships between plaintiffs and defendants concerning chemicals used in the oil production industry. Highly summarized, Nuaman resides in Bahrain and Nader resides in Saudi Arabia.[2] Zaid and defendants' chemical manufacturing facilities are currently located in Kansas. Beginning in 1997, the parties discussed and exchanged proposals and agreements concerning a joint venture that contemplated the building of a chemical plant in Saudi Arabia. The joint venture, Specialty Chemicals Co., Ltd. (JSC), was established in 2002; however, the chemical plant was never built in Saudi Arabia as originally contemplated. Instead, JSC evolved and Jacam Chemicals, LLC, (Jacam), a Sterling, Kansas company, manufactured the chemicals for shipment to Saudi Arabia. In 2003, JSC's partners and their respective ownership interests were as follows:

|        |     |
|--------|-----|
| Nuaman | 50% |
| Nader  | 20% |
| Jacam  | 30% |

Nuaman was the "Partner In Charge" and Nader was designated the "Partner (CEO) [of]

---

[1] The "Background" section is based on the parties' pleadings and briefs and should not be construed as judicial findings or factual determinations concerning the parties' complex business relationships.

[2] For consistency and editorial clarity, the court utilizes the same informal names used by the parties in their pleadings and briefs.

Planning & Operations."[3]

Unfortunately, the business relationship deteriorated and plaintiffs allege that defendants (1) breached the parties' contracts, (2) breached their fiduciary duty, (3) refused to provide an accounting, and (4) engaged in fraud. Specifically, Nader and Nuaman contend that they invested almost $4 million dollars with Jacam pursuant to various contracts which Jacam breached. They also allege that Jacam failed to implement a program to obtain "U.S. green cards" for the plaintiffs and failed to pay commissions to Nader on certain sales of Jacam chemicals.

Defendants deny that plaintiffs are entitled to any recovery and assert counterclaims for (1) breach of contract, (2) breach of fiduciary duty, and (3) fraud.[4] Jacam contends that it provided JSC with over $3 million dollars worth of chemicals at cost which JSC then sold to Saudi customers at a substantial markup.[5] Jacam's counterclaim asserts that Nader and Nuaman failed to provide a financial accounting or otherwise distribute the profits from the joint venture. In fact, Jacam believes that the money which plaintiffs "invested" with Jacam is actually the profit earned from the sale of Jacam's chemicals.

---

[3] Nader and Nuaman apparently provided day-to-day management for JSC and Zaid and Jacam contributed technical expertise and chemical products to JSC.

[4] Both sides also assert claims of unjust enrichment.

[5] In its counterclaim Jacam alleges that it sold over $3,000,000 of product to JSC but asserts in its motion that plaintiffs have failed to account for "nearly $4MM worth of chemicals."

**Defendants' Motion to Compel (Doc. 36)**

Defendants served written discovery pursuant to Fed. R. Civ. P. 34 "to determine [Jacam's] share of JSC profits and whether Nader and/or Nuaman usurped JSC opportunities by diverting chemical business to themselves or companies they owned or managed." Specifically, defendants requested that Nader and Nuaman produce records pertaining to JSC and ***other companies*** engaged in the oilfield chemical business in Saudi Arabia and Bahrain. Nader and Nuaman produced some documents but objected that records from "***other***" companies were not under their "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Defendants move to compel, arguing that plaintiffs should be ordered to identify, gather and produce documents from the "**other**" business entities because plaintiffs' ownership interests or influence with the companies is tantamount to "control" of the records. As explained below, the parties' arguments have evolved because additional documents have been produced after the motion was filed. However, plaintiffs continue to object that they do not have possession, custody or control of documents belonging to Well Flow International and Well Flow Gulf Products, two Bahrain corporations.

Nader and Nuaman have or had investments and/or involvement with numerous companies in the Middle East oil industry. Although they initially argued that the majority of these companies were separate legal entities and beyond plaintiffs' control, they now represent that all documents responsive to defendants' discovery requests concerning (1) JSC, (2) Saudi Chem Co., (3) Saudi Petrochem, (4) Petro Oil, and (5) Oil and Gas Joint Operation Center have been produced and that requests to compel documents related to these

companies are moot.[6] Doc. 47, pp. 1 & 17. Defendants concede the supplemental production but argue that plaintiffs should also withdraw their "lack of possession, custody, or control" objection concerning these five companies. Plaintiffs question why formal withdrawal of the objection is necessary or appropriate at this point and apparently maintain their objection as a matter of principle.

Regardless of the basis of their original objections to certain production requests, plaintiffs now represent that ***all*** responsive documents from five companies ***have been produced.*** Plaintiffs are bound by their representation concerning production; therefore, their objections concerning the five companies are moot and overruled.

With respect to Well Flow International and Well Flow Gulf Products, plaintiffs maintain that they do not have possession, custody, or control of the two corporations' documents. Defendants contend that plaintiffs have "control" over the documents because Nuaman has an ownership interest in the two corporations and the "practical ability to obtain the documents from another, ***irrespective of legal entitlements to the documents***." Ice Corporation v. Hamilton Sundstrand Corp., 245 F.R.D. 513, 517 & n. 14 (D. Kan. 2007)(emphasis added). As explained below, the Ice Corporation standard quoted by defendants is flawed and not persuasive.

The analysis begins with a discussion of the cases in which the standard was adopted.

---

[6] Plaintiffs represent that they have no ownership interests in or management positions with a sixth company, Saudi Chemicals; therefore, no documents were produced. Defendants do not challenge this representation or seek to compel production of Saudi Chemicals' documents.

The discovery dispute in Ice Corporation v. Hamilton also involved the issue of "possession, custody, or control" of documents for purposes of production under Fed. R. Civ. P. 34. Citing well-established case law, Judge Sebelius set forth the general standards for control under Rule 34:

> The Federal Rules of Civil Procedure require production of documents "which are under the possession, custody or control of the party upon whom the request is served." The party seeking production of documents bears the burden of proving that the opposing party has the control required under Fed. R. Civ. P 34(a). "Control comprehends not only possession but also the right, authority, or ability to obtain the documents." Specifically, "courts have universally held that documents are deemed to be within the possession, custody or control if the party has actual possession, custody or control or has ***the legal right to obtain the documents on demand***."

Ice Corporation, 245 F.R.D. at 516-17 (citations and footnotes omitted, emphasis in original). This court agrees that the above quotation accurately recites the general standards for possession, custody, or control under Rule 34(a).

However, Judge Sebelius continued and quoted an earlier opinion by Judge Waxse that "production of documents not in a party's possession is required if a party has the practical ability to obtain the documents from another, ***irrespective of legal entitlements to the documents.***" Id. at 517, quoting American Maplan Corp. v. Heilmayr, No. 00-2512-JWL, 2002 U.S. Dist. LEXIS 993 at *4 (D. Kan. January 21, 2002)(emphasis added).[7] Unfortunately, the January 21, 2002 American Maplan Lexis citation was inaccurate and

---

[7] Importantly, production in Ice Corporation was ordered because defendant had a contract with a non-party that allowed defendant to secure certain documents on demand, e.g., defendant had a ***legal right*** to the documents.

-6-

inappropriate. Judge Waxse issued his opinion on July 27, 2001 rather than January 21, 2002.[8] More importantly, the defendant in American Maplan sought review of Judge Waxse's July 27, 2001 ruling under 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a) and Judge Lungstrum specifically rejected Judge Waxse's standard (that a party "has the practical ability to obtain from another, irrespective of legal entitlement to the documents"). American Maplan Corp. v. Heilmayr, 203 F.R.D. 499, 502 (D. Kan. Sept. 19, 2001).[9] Thus, Judge Lungstrum overruled Judge Waxse's order requiring an individual to produce corporate records merely because that individual was an officer and/or stockholder of the non-party corporation. Id. at 502.[10] Based on Judge Lungstrum's ruling, the reliance on Judge Waxse's ruling is erroneous.

In this case, the only information provided by defendants is that Mr. Nuaman is the president of Well Flow International and that he has a twenty percent ownership interest in

---

[8] January 21, 2002 is the date that Lexis "received" Judge Waxse's opinion. The circumstances surrounding Lexis' electronic publication of Judge Waxse's opinion and failure to acknowledge Judge Lungstrum's opinion are unclear.

[9] Judge Waxse cited RTC v. Deloitte & Touche, 145 F.R.D. 108, 110 (D. Colo. 1992) to support his quote. However, Judge Pringle held in the Colorado case that RTC had "control" of the documents in question because it had an ***absolute and unrestricted statutory legal right*** under 12 U.S.C. 1821(o) to the documents on demand. 145 F.R.D. at 110. This court is not persuaded that the Colorado case provides legal authority for the phrase "irrespective of legal entitlement to the documents."

[10] Judge Lungstrum noted that there was neither an allegation that the corporation was the "alter ego" of the defendant nor was there any evidence that the corporation and defendant were "essentially one and the same." Id. at 502.

the Bahrain corporation.[11]  Well Flow Gulf Products is also a Bahrain corporation which is partially owned by Well Flow International.  Although Mr. Nuaman is a director of Well Flow Gulf Products, he contends he has "little to no involvement with that company" and does not use the company as his alter ego.[12]  Following Judge Lungstrum's American Maplan decision, this court is not persuaded that *merely* being a stockholder or officer of a corporation satisfies the "control" standard set forth in Fed. R. Civ. P. 34(a)(1).  Accordingly, based on the limited record in the briefs, defendants' motion to compel Nuaman to produce Well Flow Gulf Product and Well Flow International corporate documents shall be denied without prejudice.[13]

---

[11] Nader apparently has no ownership or management connection to the two Bahrain corporations.

[12] Plaintiffs argue that they have no legal right to the two corporations' documents and cannot legally require the Bahrain corporations to produce the documents.  Conceding that plaintiffs have no legal right to the documents, defendants ask this court to enter an order directing Nuaman "to make a good faith effort to get the documents and certify that he made the request to his fellow directors at Well Flow International and Well Flow Gulf Products."  Doc. 54, p. 10.  If Nuaman certifies that he cannot obtain the documents after a good faith effort, defendants state they will then attempt to obtain the documents through other means.  Id.  This circuitous approach to discovery illustrates defendants' uncertainty concerning Nader's "control" of the documents in question.

[13] Defendants have scheduled Nader and Nuaman's deposition and may develop evidence showing that Nuaman and the Bahrain corporations are "essentially one and the same" or Mr. Nuaman's alter ego.  Defendants may refile their motion to compel if they develop additional evidence concerning the relationship between the two corporations and Nuaman.

**Plaintiffs' Motion to Compel (Doc. 38)**

Plaintiffs move to compel defendants to produce all documents responsive to Production Request No. 4, 11, 15, and 16 and to answer Interrogatory No. 10. The discovery requests are addressed below.

**Production Request No. 4**

Request No. 4 seeks production of Gene Zaid's federal and state income tax returns from 2003 to the present.[14] Zaid objects to the request, arguing that his tax returns are not relevant to the claims and defenses in this case. Plaintiffs move to compel, arguing that tax returns are relevant to the claims in this case.

The relevance of Zaid's personal tax returns is not apparent; therefore, plaintiffs carry the burden of showing that the information requested is relevant to the claims and defenses in this case. Plaintiffs contend that Zaid personally received certain payments "from Saudi Arabia" in the form of "compensation" and that "the flow and use of funds is central to the plaintiffs' claims." Doc. 39, p. 12. This vague explanation does not show that Zaid's personal tax returns are relevant. To the extent they sent money directly to Zaid, plaintiffs know the amount and purpose of the payments.[15] Plaintiffs have not explained how the

---

[14] Request No. 4 also sought the tax returns for Jacam, Summit Creek Holdings and Seidler Equity Partners. Issues concerning those tax returns have been resolved and are not in issue.

[15] Zaid contends that money was sent directly to his personal account for (1) technology, (2) an entirely separate business transaction, and (3) personal loans.

-9-

money they sent directly to Zaid and his tax returns have relevance to their investment in Jacam. Accordingly, plaintiffs' request to compel production of Zaid's personal tax returns shall be DENIED.

**Production Request No. 11**

Plaintiffs report that the parties have resolved their dispute concerning Production Request No. 11; therefore, their motion to compel Request No. 11 is MOOT.

**Production Request Nos. 15 and 16,**
**Interrogatory No. 10**

Request No. 15 seeks the "financial records" of all defendants, Summit Creek, and Seidler Equity Partners from 2003 to the present. Production Request No. 16 seeks documents reflecting how defendants used any funds received from plaintiffs or any entity with which plaintiffs were associated from 2003 to the present. Interrogatory No. 10 is closely related to Request No. 16 and asks defendants to explain what they did with any money provided by plaintiffs. Defendants oppose the request, arguing that the request is overly broad and seeks irrelevant information. As explained in greater detail below, the motion to compel the three discovery requests shall be denied. However, plaintiffs are granted leave to serve more narrowly tailored discovery requests.

Defendants' arguments in opposition fall into two general categories. First, defendants argue that details concerning the use of the funds and financial information

regarding defendants is irrelevant because plaintiffs never invested the five million dollars contemplated by the "Kansas investment" agreement and that the two to four million dollars sent to Jacam actually came from JSC.[16] Unfortunately, this argument is based on defendants' views concerning the substantive merits of the case and on facts which have not been established. Moreover, even if plaintiffs did not invest the full five million dollars required for a twenty-five percent interest in defendants' Kansas chemical business, plaintiffs assert a claim against defendants for unjust enrichment based upon the millions of dollars they transferred to Jacam. Plaintiffs are entitled to *some* discovery concerning the use of *their* money.

Defendants' second argument is that the requests are overly broad. The court agrees. Plaintiffs know or should know the specific amounts of *their* money which they transferred to Jacam for purposes of their investment in the Kansas plant. The claims asserted in the complaint and counterclaim involve specific contracts and agreements and discovery is limited to those transactions. The current discovery requests are overly broad because they seek information concerning other transfers of money that have no apparent relationship to

---

[16] The amount of money sent to Jacam varies in the pleadings and briefing. Highly summarized, the parties entered into a Kansas venture to build a chemical plant in Sterling, Kansas with plaintiffs investing an initial one million dollars with receipt of a twenty-five percent interest in the venture upon payment of five million dollars. Defendants assert that at one point they treated the money as a loan but later created an offshore entity to hold stock in trust for plaintiffs pending payment of the full five million dollars. At a later point, defendants reorganized and replaced the "stock" held by the offshore entity with three million dollars. Defendants represent that the money from the offshore account will be "distributed to its rightful owner upon completion of this litigation."

the claims in the pleadings.[17]

The discovery requests are also overly broad in requesting "financial records" and a detailed accounting concerning the use of plaintiffs' money. The production of ***all*** of defendants' financial records is unnecessary and beyond the needs of this case. For example, there is little benefit in requiring a party to produce all of its invoices and receipts. Similarly, plaintiffs have not shown the need for a "detailed" accounting or tracking of plaintiffs' funds. It is sufficient for defendants to indicate in their response to Interrogatory No. 10 where the funds were deposited and the general use of funds from that account. Accordingly, plaintiffs' motion to compel Production Request Nos. 15 and 16 and Interrogatory No. 10 shall be DENIED.

**IT IS THEREFORE ORDERED** that defendants' motion to compel **(Doc. 36)** is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiffs' motion to compel **(Doc. 38)** is **DENIED**, consistent with the rulings herein.

---

[17] Review of the motions and discovery responses reveals that the Zaid, Nader, and Nuaman have had a number of other dealings over the years. Discovery in this case will not be permitted to sort out loans and other transactions that are not reflected in the claims asserted in the pleadings.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 17th day of May 2012.

               S/ Karen M. Humphreys
               _____
               KAREN M. HUMPHREYS
               United States Magistrate Judge