## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NUAMAN ABDULLA AHMED AL NOAIMI and DR. NADER MOHAMMAD ABDALLA OBEID, )<br><br>Plaintiffs, )<br><br>v. )<br><br>NAJIB HASSAM AHMAD ZAID, a/k/a Gene H. Zaid, JACAM MANUFACTURING LLC, JACAM CHEMICAL COMPANY INC., JACAM MANUFACTURING CHEMICALS COMPLEX, JACAM CHEMICALS LLC, JACAM SPECIALTYCHEMICALS LLC, and JACAM CHEMICAL PARTNERS Ltd. )<br><br>Defendants. ) | Case No. 11-1156-EFM |

NUAMAN ABDULLA AHMED AL )
NOAIMI and DR. NADER MOHAMMAD )
ABDALLA OBEID, )
                                        )
            Plaintiffs, )
                                        )
v. )               Case No. 11-1156-EFM
                                        )
NAJIB HASSAM AHMAD )
ZAID, a/k/a Gene H. Zaid, )
JACAM MANUFACTURING LLC, )
JACAM CHEMICAL COMPANY INC., )
JACAM MANUFACTURING CHEMICALS)
COMPLEX, )
JACAM CHEMICALS LLC, )
JACAM SPECIALTYCHEMICALS LLC, )
and JACAM CHEMICAL PARTNERS Ltd. )
                                        )
            Defendants. )
_____)

## MEMORANDUM AND ORDER

This matter is before the court on plaintiffs' motion to quash defendants' proposed subpoena to a company providing email services to plaintiffs.  (Doc. 69).[1]  As explained in greater detail below the motion is GRANTED IN PART and DENIED IN PART.

_____

[1]

    Although characterized as a motion to quash, the subpoena has not been formally served.  Plaintiffs' motion is more in the nature of a request for a protective order.

## Nature of the Case[2]

This case springs from complex business relationships between plaintiffs and defendants concerning chemicals used in the oil production industry.  Highly summarized, Nuaman resides in Bahrain and Nader resides in Saudi Arabia.[3]  Zaid and defendants' chemical manufacturing facilities are currently located in Kansas.  Beginning in 1997, the parties discussed and exchanged  proposals and agreements concerning a joint venture that contemplated the building of a chemical plant in Saudi Arabia.  The joint venture, Specialty Chemicals Co., Ltd. (JSC), was established in 2002; however, the chemical plant was never built in Saudi Arabia as originally contemplated.   Instead, JSC evolved and Jacam Chemicals, LLC (Jacam), a Sterling, Kansas company, manufactured the chemicals for shipment to Saudi Arabia.  In 2003, JSC's partners and their respective ownership interests were as follows:

|        |     |
|--------|-----|
| Nuaman | 50% |
| Nader  | 20% |
| Jacam  | 30% |

Nuaman was the "Partner In Charge" and Nader was designated the "Partner (CEO) [of]

_____

[2]

The "Background" section is based on the parties' pleadings and briefs and should not be construed as judicial findings or factual determinations concerning the parties' complex business relationships.

[3]

For consistency and editorial clarity, the court utilizes the same informal names used by the parties in their pleadings and briefs.

Planning & Operations."[4]

Unfortunately, the business relationship deteriorated and plaintiffs allege that defendants (1) breached the parties' contracts, (2) breached their fiduciary duty, (3) refused to provide an accounting, and (4) engaged in fraud. Specifically, Nader and Nuaman contend that they invested almost $4 million dollars with Jacam pursuant to various contracts which Jacam breached. They also allege that Jacam failed to implement a program to obtain "U.S. green cards" for the plaintiffs and failed to pay commissions to Nader on certain sales of Jacam chemicals.

Defendants deny that plaintiffs are entitled to any recovery and assert counterclaims for (1) breach of contract, (2) breach of fiduciary duty, and (3) fraud.[5] Jacam contends that it provided JSC with over $3 million dollars' worth of chemicals at cost which JSC then sold to Saudi customers at a substantial markup.[6] Jacam's counterclaim asserts that Nader and Nuaman failed to provide a financial accounting or otherwise distribute the profits from the joint venture. Jacam believes that the money which plaintiffs "invested" with Jacam is actually the profit earned from the sale of Jacam's chemicals.

---

[4]

Nader and Nuaman apparently provided day-to-day management for JSC and Zaid and Jacam contributed technical expertise and chemical products to JSC.

[5]

Both sides also assert claims of unjust enrichment.

[6]

In its counterclaim Jacam alleges that it sold over $3,000,000 of product to JSC but asserts in its motion that plaintiffs have failed to account for "nearly $4MM worth of chemicals."

**Plaintiffs' Motion to Quash Subpoena (Doc. 69)**

Consistent with Fed. R. Civ. P. 45(b), defendants served plaintiffs with notice of their intent to serve a records subpoena on Mail2World, Inc., a company that provided Nader with an email address (JACAM@mail2world.com) during a period of time relevant to this lawsuit. Defendants prepared the subpoena for Mail2World because defendants' discovery requests directly to Nader and Nuaman for relevant email messages have not been produced.[7] Plaintiffs object and move to quash the subpoena.  Specifically, plaintiffs argue that the subpoena is overly broad, unduly burdensome, and has the practical effect of requiring the production of Nader's communications "without any intermediate review to determine the presence of privileged communications."  Plaintiffs also argue that "production could violate the Electronic Communications Privacy Act."  Plaintiffs' objections are discussed in greater detail below.

**Overly Broad**

Defendants' proposed subpoena asks Mail2World, Inc. to produce "all email and attachments thereto, without regard to date, sent to or from the email address of jacam@mail2world.com or JACAM@mail2world.com."  The subpoena also instructs

---

[7] Nader and Nuaman have repeatedly assured defendants that they are trying to retrieve the email messages from Mail2World but claim to have encountered unspecified "technological issues."  After the passage of eleven months with no progress in securing the records from Nader and Nuaman, defendants seek to secure the email messages directly from Mail2World.

Mail2World to provide defense counsel with an estimate of any costs associated with this request before gathering and/or copying the requested email.  Plaintiffs contend that the request is overly broad because it is not limited to a specific period of time or scope.  <u>See</u> <u>Theofel v. Farey-Jones</u>, 359 F. 3d 106 (9th Cir. 2004); <u>In re Subpoena Duces Tecum to AOL,</u> <u>LLC</u> 550 F. Supp. 2d 606 (E.D.Va. 2008).

Plaintiffs' argument that the subpoena should be quashed because it is overly broad is not persuasive because they offer no factual explanation or context for their objection and merely cite the rulings in <u>Theofel</u> and <u>AOL LLC</u>.  <u>Theofel</u> is a Ninth Circuit ruling and <u>AOL,</u> <u>LLC</u> is an Eastern District of Virginia ruling and neither opinion is binding authority on this court.  More importantly, the issue of whether a discovery request is overly broad is determined by the particular circumstances of the case.  Defendants contend, and plaintiffs do not dispute, that Nader created the email address <u>JACAM@mail2world.com</u> to send and receive emails related to Jacam and JSC.  Notably absent from plaintiffs' motion is any suggestion of a "relevant time period" for the discovery of email communications.[8] Plaintiffs' conclusory argument that the subpoena is overly broad lacks sufficient factual information and is rejected.

---

[8]

*Plaintiffs* have requested and received email discovery ***from defendants*** dating back to 1997.

**Unduly Burdensome**

Plaintiffs assert the conclusory objection that the request for "all" emails is unduly burdensome.   Aside from this conclusory objection, plaintiffs present no evidence whatsoever concerning the "burden" this requests places on Mail2World.   Plaintiffs have failed to carry their burden of supporting their objection; thus, the objection based on undue burden is rejected.

**Privileged Information**

Plaintiffs assert that the two email addresses formerly belonged to Dr. Nader Obeid and that "responsive documents would ***likely*** include personal, confidential, and privileged communications unrelated to this litigation."  (Doc. 70, p. 2, emphasis added).  However, plaintiffs provide no further information or explanation concerning the "likely" content of the requested email production.  Plaintiffs also argue that the subpoena requires that the documents be produced to defense counsel "without any intermediate review to determine the presence of privileged communications."

Again, plaintiffs' merely assert a conclusory allegation, without any factual evidence, that the email addresses ***that were created to send and receive emails related to Jacam and JSC*** contain personal, confidential, and privileged communications.  More importantly, defendants offer to amend the subpoena to instruct Mail2World to send the emails directly to plaintiffs' counsel for review before production to defendants.  This modification resolves plaintiffs' objection that privileged communications might be inadvertently provided to

defendants.

### The Electronic Communications Privacy Act

Plaintiffs argue that the subpoena "likely violates federal law" and "alternatively, production could violate the Electronic Communications Privacy Act (ECPA)." (Doc. 70, pp 4-5).[9]  Plaintiffs' vague argument that the subpoena "likely violates federal law" is summarily rejected because the argument is unsupported by any coherent argument.  The alternative argument concerning the Electronic Communications Privacy Act also lacks substantive discussion, although plaintiffs again cite the <u>AOL LLC</u> case from the Eastern District of Virginia.  In <u>AOL LLC</u>, Judge Lee concluded that a civil subpoena under Fed. R. Civ. P. 45 is not an exception recognized by the ECPA.  <u>Id</u>. at 550 F. Supp. 2d 611.

Research reveals no controlling authority in the Tenth Circuit or in the District of Kansas concerning the ECPA and the use of a civil subpoena.  However, the court need not resolve the issue of whether a civil discovery subpoena, standing alone, is an exception to ECPA because the Act allows an internet storage provider to produce records with the consent of the subscriber.  <u>See</u> 18 U.S.C.§ 2702(b)(3).  Nader, the subscriber, is a plaintiff in this case; therefore, the court has authority under Fed. R. Civ. P. 1, 26(b)(2) and 26(c) to require Nader to execute a consent that satisfies 18 U.S.C. § 2702(b)(3).  Nader's consent, when attached to the subpoena, alleviates any concern that production might violate the

---

[9]  The ECPA is codified as 18 U.S.C. §§ 2701-03.

ECPA.

## Conclusion

Plaintiffs' motion to quash contains conclusory objections with no supporting facts. Defendants counter with factual information explaining the context of the subpoena and offer modifications to alleviate plaintiffs' concerns.  For reasons unexplained, plaintiffs filed no reply brief contesting defendants' arguments or proposed modifications.  Based on the limited record, defendants shall proceed with service of the subpoena on Mail2World with the modifications discussed herein.

**IT IS THEREFORE ORDERED** that plaintiffs' motion to quash (**Doc. 70**) is **GRANTED IN PART AND DENIED IN PART**.  Plaintiffs shall execute a consent for the release of email communications associated with the two email addresses by **October 15, 2012.**  The consent shall be attached to and served with the subpoena issued to Mail2World.

**IT IS FURTHER ORDERED** that the subpoena shall be modified to direct production of the requested emails to plaintiffs' counsel.  Plaintiffs' counsel shall produce the emails and/or a privilege log to defendants within **30 days** of receipt of the email messages.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 5th day of October 2012.


S/ Karen M. Humphreys

_____
KAREN M. HUMPHREYS
United States Magistrate Judge